FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HUSNIJA M.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:18-CV-00147-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and her application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1, 30, 44. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES**

Plaintiff's Motion for Summary Judgment.

## I.     Jurisdiction

Plaintiff filed her applications for Disability Insurance Benefits and

Supplemental Security Income on April 14, 2015. *See* AR 30, 234-240, 241-46. In

both applications, Plaintiff's initial alleged onset date of disability was August 1,

2013.[1] AR 234, 241. Plaintiff's applications were initially denied on August 20,

2015, *see* AR 155-162, and on reconsideration on October 9, 2015. *See* AR 165-

176. Plaintiff then filed a request for a hearing on November 2, 2015. AR 177-78.

A hearing with Administrative Law Judge ("ALJ") Jesse K. Shumway

occurred on February 23, 2017. AR 30, 68, 70. On April 13, 2017, the ALJ issued

a decision concluding that Plaintiff was not disabled as defined in the Act and was

therefore ineligible for disability benefits or supplemental security income. AR 27-

44. On March 14, 2018, the Appeals Council denied Plaintiff's request for review,

AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See*

20 C.F.R. § 404.981.

On May 11, 2018, Plaintiff timely filed the present action challenging the

denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before

this Court pursuant to 42 U.S.C. § 405(g).

---

[1] Plaintiff later amended her alleged onset date to April 1, 2015. AR 30, 73.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2**

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the

court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 23 years old on the amended alleged date of onset, which the regulations define as a younger individual. AR 109; *see* 20 C.F.R. § 404.1563. She attended school through the 10th grade and can communicate in English. AR 42, 90, 276, 278. Plaintiff has no past relevant work. AR 42.

### V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from April 1, 2015 (the amended alleged onset date) through April 13, 2017 (the date the ALJ issued his decision). AR 44.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (citing 20 C.F.R. § 404.1571 *et seq*.). AR 32.

**At step two**, the ALJ found Plaintiff had the following severe impairments: personality disorder, cannabis use disorder, depression, and general anxiety disorder (citing 20 C.F.R. § 404.1520(c)). AR 32-34.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 34-36.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all levels of exertion. AR 36. However, the ALJ found that Plaintiff had a number of non-exertional limitations, which included: that she was limited to simple, routine tasks with reasoning levels of two or less; that she needed to learn by demonstration; that she required a routine, predictable work environment with no more than occasional changes and simple decision-making; that she could only have occasional, superficial contact with the public, supervisors, and coworkers; and, finally, that she could not engage in collaborative tasks. AR 36. Transferability of job skills was not an issue because Plaintiff had no past relevant work. AR 42.

At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. AR 43. These included a laundry worker, a small parts assembler, and an officer cleaner. AR 43. In the alternative, the ALJ found that even if Plaintiff were limited to sedentary work, she could still perform the jobs of a document preparer, a printed circuit board assembler, and a charge account clerk. AR 43.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12 at 11. Specifically, she argues the ALJ: (1) improperly discredited her subjective pain complaint testimony; and (2) improperly weighed the medical opinion evidence. *Id.*

## VII.    Discussion

### A.    The ALJ did not Improperly Reject Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 12 at 11-12. Specifically, she argues that the ALJ attributed her psychological symptoms solely to her substance abuse problems, but contends she quit using marijuana a year before the hearing. *Id.* at 11. She argues that even after quitting marijuana, she continued suffering from significant psychological symptoms. *Id.*

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 36. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 36-37.

As an initial matter, the ALJ found evidence of malingering, which Plaintiff does not contest. AR 37-39; ECF No. 12 at 11-12. Plaintiff underwent a psychological evaluation in September 2016. AR 778-782. Although the examining psychologist noted Plaintiff's significant deficits in cognitive functioning, she found that Plaintiff "appeared to be malingering." AR 780-81. Despite Plaintiff's difficulty understanding words, responding to questions, and

struggling with directions, "she was able to sign in and navigate the computer system at DSHS with absolutely no difficulty or assistance." AR 780. The psychologist noted that Plaintiff "did not put forth valid effort" during testing, that her performance was "very inconsistent," and that "her difficulties bec[ame] progressively more pronounced as the evaluation progressed." AR 780-81. The psychologist then administered a test specifically designed to measure memory malingering, with positive results. AR 781. The psychologist diagnosed Plaintiff with malingering and concluded that her poor test scores did "not seem an accurate reflection of her functioning." AR 781. Affirmative evidence of malingering supports rejecting a claimant's testimony. *See Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

In addition to the evidence of malingering, the ALJ offered four clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony and supported those reasons with specific references to the medical record. *See* AR 36-40. First, the ALJ reasoned that Plaintiff's mental examination and observational findings throughout the treatment record were generally inconsistent with her alleged level of limitation. AR 37. The ALJ noted that essentially none of Plaintiff's monthly mental status examinations indicated or suggested any significant psychological abnormalities. AR 37-38; *see* AR 498-99, 500-01, 502-03, 550, 556, 560, 753-54, 757-58, 761-62, 765-66, 770-71, 796, 820-21, 824-25.

The ALJ acknowledged that Plaintiff demonstrated significant mental limitations in three consultative examinations (including the one discussed above) but discounted their reliability, given that the examiners all opined that Plaintiff was either malingering or under the influence of substances during the examinations. AR 37-39. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues that the "ALJ concluded that [her] symptoms were due to substance abuse," and contends this was error because she "had stopped smoking marijuana at least a year before the hearing."[2] ECF No. 12 at 11. Plaintiff fails to specify where the ALJ concluded that her psychological symptoms were due to marijuana use. *Id.* However, it appears she is referring to the two consultative examinations that the ALJ discounted—despite her exhibiting significant mental limitations—because she was under the influence of substances during those examinations. AR 37-38.

The ALJ first noted a physical consultative examination in July 2015 during which the physician noted that Plaintiff had substantial issues answering questions,

---

[2] Although Plaintiff testified at the hearing that she had stopped using marijuana a year prior, *see* AR 92-93, the ALJ specifically found that this statement was not credible in light of the medical expert's express opinion to the contrary. AR 39; *see* AR 74-78, 89.

following instructions, and with mental function. AR 37, 618-620. The physician believed this indicated "extreme sedation and/or medication-related intoxication." AR 620. The ALJ also noted a psychiatric consultative examination during which Plaintiff also exhibited significant mental issues. AR 38, 627-29. The psychiatrist, Dr. Amy Dowell, noted that during the examination, Plaintiff "appeared to be on the edge of nodding off," "her eyes would appear to roll back in her head as she was talking," she "was wobbly when she walked," and "appeared to be under the influence of an unknown substance." AR 628. Dr. Dowell opined that if Plaintiff "were sober and not on any medications or substances, she likely would have performed much better during this evaluation." AR 629. The ALJ noted that Plaintiff's performance during these examinations was highly inconsistent with her treatment notes from around the same time, which did not indicate any cognitive issues. AR 38; *see* AR 639-650.

Contrary to Plaintiff's suggestion, the ALJ did not conclude that all her symptoms were caused by her substance abuse and then discount her credibility on this sole basis. Rather, the ALJ reasoned that the limitations Plaintiff demonstrated during these two consultative examinations were not accurate, given that Plaintiff was under the influence of substances during them. The ALJ then found that Plaintiff treatment notes were a more reliable indicator of her true mental abilities. This was not improper.

///

In any event, the ALJ provided three additional clear and convincing reasons for discounting Plaintiff's subjective complaint testimony, none of which are contested. *See* ECF No. 12 at 11-12. Second, the ALJ discounted Plaintiff's subjective complaint testimony because of her noncompliance with recommended treatment. AR 37. The ALJ noted that in January and February 2015, Plaintiff missed several scheduled counseling sessions. AR 37; *see* AR 560-66. The therapist called Plaintiff, left voicemail messages, and then sent multiple follow-up letters. AR 562, 564, 566. Each letter scheduled a time for a new appointment and advised Plaintiff that if she continued to miss sessions, therapy would be terminated. AR 562, 564, 566. Plaintiff did not respond and the therapist closed her file. AR 561. Even after she began attending treatment again, her treatment record contains nearly two dozen other instances of missed appointments, despite the therapist stressing the importance of attendance.[3] *See* AR 658, 663, 664, 667, 668, 671, 673, 675, 687, 689, 692, 694, 701, 702, 703, 725, 728, 741, 745, 787, 790, 795. Following these missed sessions, the therapist again sent Plaintiff letters scheduling new appointments and advising her that if she did not attend, therapy

---

[3] Even when she did attend treatment, Plaintiff's therapist noted that she "appeared disengaged and distracted by her cell phone throughout session." AR 556. She was often disinterested in therapy and was mainly concerned with her counselors providing the Department of Social and Health Services information about her attendance. AR 550, 556. This suggested to the ALJ that her reason for attending treatment was maintaining benefits rather than an actual belief that she was impaired. AR 37.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

would be terminated. AR 673, 791. Plaintiff again did not respond and the therapist closed her file. AR 795, 800. The ALJ found that Plaintiff's failure to attend treatment suggested that she did not believe that her impairments were serious enough to require treatment. AR 37. An ALJ may properly discount a claimant's subjective complaints when treatment is inconsistent with the level of complaints or a claimant is not following prescribed treatment without good reason. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment, this calls their alleged limitations into question. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Third, the ALJ discounted Plaintiff's subjective complaints because her lack of ongoing employment was due to a factor unrelated to her allegedly disabling impairments. AR 39. In November 2015, Plaintiff applied for a job but was rejected because she failed the drug test. AR 669. She then stated, "I failed it but I am not going to stop smoking weed because it's how I cope. I don't care." AR 669. The ALJ reasoned that if Plaintiff was as severely limited as she alleged, it was unlikely that she would have been seeking employment. AR 38. Thus, the ALJ concluded that Plaintiff's main barrier to employment was not her psychological conditions, but her "refusal to give up marijuana in order to pass an employer's drug screen." AR 40. Lack of ongoing employment due to factors unrelated to

one's allegedly disabling impairments is a sufficient basis to discredit subjective

pain testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Finally, the ALJ discounted Plaintiff's subjective complaints of completely

disabling limitations because they were belied by her daily activities. AR 39. The

ALJ noted that Plaintiff is generally able to engage in day-to-day activities,

including doing the laundry, cooking, doing chores, and being the primary

caregiver for her young child. AR 39; *see* AR 96-97, 100. The ALJ found that

these activities were inconsistent with Plaintiff's claimed limitations and spoke to

her generally intact functioning. AR 39. Activities inconsistent with the alleged

symptoms—even when they suggest some difficulty functioning—are proper

grounds for questioning the credibility of subjective complaints when the person

claims a totally disabling impairment. *Molina*, 674 F.3d at 1113; *see also Rollins*,

261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(3)(i).

When the ALJ presents a reasonable interpretation that is supported by

substantial evidence, it is not the Court's role to second-guess it. For the reasons

discussed above, the ALJ did not err when discounting Plaintiff's subjective

complaint testimony because there was evidence of malingering, and ALJ also

provided four clear and convincing reasons for doing so.

///

///

**B.     The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues the ALJ erred in weighing the medical opinion evidence

from four providers: (1) examining psychiatrist Dr. Amy Dowell, M.D.; and (2)

examining counselor Angela Velasco, examining counselor Steven Sample, and

intern Chante Alvarado. ECF No. 12 at 12.

**1.     Dr. Amy Dowell**

Title II's implementing regulations distinguish among the opinions of three

types of physicians: (1) those who treat the claimant (treating physicians); (2) those

who examine but do not treat the claimant (examining physicians); and (3) those

who neither examine nor treat the claimant but who review the claimant's file

(non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th

Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's

opinion carries more weight than an examining physician's, and an examining

physician's opinion carries more weight than a non-examining physician's.

*Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another

doctor's opinion—as Dr. Dowell's is—an ALJ may only reject it by providing

"specific and legitimate reasons that are supported by substantial evidence."

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the

"specific and legitimate" standard by "setting out a detailed and thorough summary

of the facts and conflicting clinical evidence, stating her [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted). In contrast, an ALJ fails to satisfy the standard when she or he "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for her [or her] conclusion." *Id.* at 1012-13.

Dr. Dowell is an examining psychiatrist who evaluated Plaintiff in August 2015. AR 626-630. Dr. Dowell opined that Plaintiff would have difficulty performing detailed and complex tasks but "would not have difficulty performing simple and routine tasks" like working in a deli. AR 630. She opined that Plaintiff "would have difficulty performing work activities on a consistent basis without special or additional instruction." AR 630.

However, as discussed above, Dr. Dowell also noted that during the examination, Plaintiff "appeared to be on the edge of nodding off," "her eyes would appear to roll back in her head as she was talking," she "was wobbly when she walked," and "appeared to be under the influence of an unknown substance."[4] AR 628. Dr. Dowell opined that if Plaintiff "were sober and not on any

---

[4] Plaintiff argues that she was "tired and not feeling well that day and that was the reason that she appeared to be under the influence of a substance." ECF No. 12 at 12; *see* AR 98. Although this is one interpretation of the evidence, the ALJ concluded differently and substantial evidence supports the ALJ's conclusion.

medications or substances, she likely would have performed much better during this evaluation." AR 629.

The ALJ assigned little weight to Dr. Dowell's opinion. AR 41. First, as discussed above, the ALJ discounted the results of this examination because Plaintiff was under the influence during the examination and could have performed better if she were sober. AR 41; *see infra* at 12. This was proper. *See Cooper v. Colvin*, No. 2:13-CV-1693 CKD, 2014 WL 5473128, at *3 (E.D. Cal. 2014) (holding that ALJ properly gave little weight to consultative psychologist's opinion because claimant engaged in substance abuse at the time of the evaluation, which undermined the validity of the examination findings); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999). Second, the ALJ discounted Dr. Dowell's opinion because it was inconsistent with Plaintiff's treatment notes, which contained no suggestion of a cognitive impairment or other noteworthy abnormalities. AR 41; *see infra* at 10-11. This was also proper. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Morgan*, 169 F.3d at 602.

///

///

///

### 2. Nonmedical "Other Source" Opinions

#### a. Lower legal standard

Importantly, the "specific and legitimate" standard discussed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians (*e.g.*, Dr. Dowell), licensed psychologists, and various other specialists. *See* former 20 C.F.R. §§ 404.1513(a) (2014).

"Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and other nonmedical sources—are not entitled to the same deference as acceptable medical sources.[5] *Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *see* 20 C.F.R. § 404.1527(f). An ALJ may discount a nonmedical source's opinion by providing reasons "germane" to each witness for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

#### b. Angela Velasco, Steven Sample, Chante Alvarado

Plaintiff also contends the ALJ erred in considering the opinions of examining counselor Angela Velasco, examining counselor Steven Sample, and intern Chante Alvarado. ECF No. 12 at 12. These providers evaluated Plaintiff and submitted "WorkFirst" assessment forms to the Washington State Department of

---

[5] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8).

Social and Health Services as part of Plaintiff's application for state public assistance benefits. *See* AR 469-72, 476-79, 481-83, 802-04; ECF No. 12 at 7-9.

The ALJ assigned little weight to these providers' opined limitations. AR 41. As an initial matter, both of Chante Alvarado's assessments were completed before Plaintiff's alleged onset of disability.[6] *See* AR 30 (alleged onset date of April 1, 2015), 469-71 (assessment dated October 13, 2014), 476-78 (assessment dated December 17, 2014). Medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle*, 533 F.3d at 1165.

Moreover, Angela Velasco noted that Plaintiff's conditions were not permanent and would only limit her ability to work for six months. *See* AR 482. Medical opinions that assess only temporary limitations lasting less than 12 months are of little probative value. *See Carmickle*, 533 F.3d at 1165 (explaining that doctor's "two-week excuse from work" was not indicative of "claimant's long-term functioning"); *Cf.* 42 U.S.C. § 423(d)(1)(A).

Additionally, the ALJ assigned these assessment forms little weight because they were "little more than check box forms with little explanation or support," and "provide[d] no explanation as to the extent of [Plaintiff's mental] limitations." AR 41. This was proper. *Bayliss*, 427 F.3d at 1216 (ALJs need not accept opinions that

---

[6] In any event, Ms. Alvarado actually opined that Plaintiff was able to work, *see* AR 476, contradicting Plaintiff's assertions to the contrary.

are brief, conclusory, and inadequately supported by clinical findings); *Holohan*, 246 F.3d at 1202 (explained opinions are afforded more weight than unexplained ones).

Finally, the ALJ assigned these assessment forms little weight because they were inconsistent with Plaintiff's treatment notes, which did not indicate any noteworthy abnormalities. AR 41; *see infra* at 10-11. This was also proper. *See Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 602.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED.**

3.    Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 27th day of August, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge